1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF PUERTO RICO
2

3

UNITED STATES OF AMERICA,       )
4                               )
                 Plaintiff,     )    Case No:  12-922 (PG)
5    vs.                        )
                                )    STATUS CONFERENCE
6    MARTIN THUNA, et al.,      )
                                )
7                 Defendants.   )

8    _____

9    _____

10             TRANSCRIPT OF STATUS CONFERENCE
                      HELD BEFORE
11        THE HONORABLE JUAN M. PEREZ-GIMENEZ
               Wednesday, June 22, 2016
12

13   _____

14

                 A P P E A R A N C E S
15

16   For the United States:

17          Mr. Jose Ruiz-Santiago, AUSA

18

     For the Defendants:
19
             (26) Ms. Kendys Pimentel-Soto, Esq.
20           (24) Mr. Jose R. Ortiz-Velez, Esq.
             (24) Mr. James Boyle, Esq.
21           (2)  Mr. Michael Pasano, Esq.
             (27) Mr. Robert Rentzer, Esq.
22           (27) Mr. Carlos Sanchez, Esq.
             (4)  Mr. Juan Carlos Fontanez, Esq.
23           (1)  Mr. Harry Anduze-Montano, Esq.
             (1)  Mr. Juan Acevedo, Esq.
24           (30) Mr. Jason Gonzalez, Esq.
             (9)  Ms. Rachel Brill, Esq.
25           (28) Mr. Francisco Rebollo-Casalduc, Esq.

1          (PROCEEDINGS COMMENCED AT 11:30 A.M.)

2          DEPUTY CLERK:  Criminal Case 12-922, United States

3    of America versus Martin Thuna, et al.  Counsel, please

4    identify yourself for the record.

5          MR. RUIZ:  Jose Ruiz for the Government, Your

6    Honor.

7          MS. PIMENTEL:  Good morning again.  Ms. Kendys

8    Pimentel-Soto for Drogueria Villa.

9          MR. ORTIZ:  Good morning.  May it please the

10   Court.  Jose R. Ortiz-Velez, local counsel for Drogueria de

11   la Villa, DDLV, Number 24.

12         MR. BOYLE:  Good morning, Your Honor.  James Boyle

13   on behalf of Defendant Drogueria de la Villa, 24 also.

14         THE COURT:  Let me get this straight.

15   Ms. Pimentel is the attorney for Drogueria Villa.

16         MS. PIMENTEL:  Yes, Your Honor.

17         THE COURT:  And Mr. Ortiz-Velez is local counsel

18   for Drogueria de la Villa?

19         MR. BOYLE:  Yes, sir.

20         THE COURT:  They are two different corporations.

21         MR. BOYLE:  That is correct, sir.

22         THE COURT:  Mr. Boyle is counsel for Drogueria de

23   la Villa.

24         MR. BOYLE:  That is correct.

25         THE COURT:  Okay.  Thank you.

1          MR. PASANO:  Good morning, Your Honor.  Mike

2     Pasano on behalf of Defendant Wayne Thuna.

3          MR. RENTZER:  Good morning, Your Honor.  Robert

4     Rentzer on behalf of Tigran Khacheryan.  And Carlos Sanchez

5     is also co-counsel, and he is present as well, Your Honor.

6          THE COURT:  Okay.

7          MR. FONTANEZ:  Good morning, Your Honor.  Juan

8     Carlos Fontanez on behalf of Number 4, Eugene Shirley.

9          MR. ANDUZE:  Good morning, Your Honor.  My name is

10     Harry Anduze Montano, and I am appearing on behalf of

11     Mr. Martin Thuna, together with Mr. Juan Acevedo, who is

12     here today.

13          MR. ACEVEDO:  Good morning.

14          MR. GONZALEZ:  Good morning, Your Honor.  Jason

15     Gonzalez on behalf of FMC Specialty.

16          THE COURT:  Specialty Care, Inc.

17          MR. GONZALEZ:  Yes, sir.

18          MS. BRILL:  Good morning, Your Honor.  Rachel

19     Brill.  I represent Dimitry Ashbel; local counsel.

20          MR. REBOLLO:  Good morning, Your Honor.  Francisco

21     Rebollo-Casalduc for Mr. Edvin Ovasapyan.

22          THE COURT:  All right.  Mr. Ruiz.

23          MR. RUIZ:  Yes, Your Honor.  Can we inform?

24          THE COURT:  Yes.

25          MR. RUIZ:  I had a PowerPoint presentation, but my

1    computer won't unlock for some reason, so I have to do it

2    orally.  But some things significant have happened.  We

3    executed a search warrant on the premises of DDLV on

4    June 14th, and also we froze several bank accounts --

5            THE COURT:  That's Defendant 24.

6            MR. RUIZ:  -- as to --

7            THE COURT:  Drogueria de la Villa.

8            MR. RUIZ:  -- Drogueria de la Villa, and personal

9    bank accounts of Martin Thuna, and bank accounts from the

10   new suppliers.

11           Let me -- the indictment that you have so far,

12   Your Honor, is a superseding indictment that charges

13   violations from January 2007 to January 2011.  And that

14   indictment was returned on December of 2012.  Well, it

15   happens that the Defendants DDLV and the Thunas continue to

16   do the same thing of selling diverted drugs after they were

17   indicted and on bond from 2013 to the present.

18           I was going to show you a PowerPoint slide -- they

19   have about nine suppliers.  In the time span from 2013 to

20   2016, they have purchased drugs from those suppliers which

21   total $121 million.  That's DDLV purchasing.  And we intend

22   today, as we promised counsel for DDLV, with Your Honor's

23   permission, as a token of good faith from the Government, to

24   provide a sanitized copy of the affidavit for the search

25   warrant.  And sanitized -- it is very minimally sanitized.

1     It has about 70 pages.  It's sanitizing the names of our

2     cooperators, for obvious reasons.  But it's -- the evidence

3     as to how these drugs are diverted by the new companies to

4     DDLV is there.  And I took it to -- myself, after -- after

5     the search warrant --

6          THE COURT:  Is that a new indictment?

7          MR. RUIZ:  We are -- yes, we are envisioning a new

8     indictment, unless we can reach an agreement.  But --

9          THE COURT:  So the affidavit which you are going

10    to turn over to some defendants was the one utilized by the

11    Government agents, but you have not reached the stage of the

12    indictment --

13         MR. RUIZ:  That's correct.

14         THE COURT:  -- based on that search.

15         MR. RUIZ:  That's for the search warrant, yes.  So

16    we executed a search warrant.  And I need the Court's

17    permission to unseal it for that purpose, and that's why I

18    haven't given it to them to date.

19         THE COURT:  Has it been returned by the grand

20    jury?

21         MR. RUIZ:  Yes.  By the -- you mean the search

22    warrant?

23         THE COURT:  No, no, I mean --

24         MR. RUIZ:  No, the indictment -- there is no

25    indictment now for the new case.

1          THE COURT:  Well, I don't have to participate in

2     that if you -- I mean --

3          MR. RUIZ:  It's a motion.  I'm sorry, Your Honor.

4     It's a motion to unseal for the affidavit of the search

5     warrant.

6          THE COURT:  Okay.

7          MR. RUIZ:  That's what we need.

8          THE COURT:  That's why I understood there was an

9     indictment.

10          MR. RUIZ:  No, no.  There is no indictment yet.

11          THE COURT:  All right.  Yet.  Okay.

12          MR. RUIZ:  Yet.  That's right.  So the thing is,

13     we intend to give that today so that they can study that.

14          THE COURT:  If the Court allows it.

15          MR. RUIZ:  If the Court allows it, of course.  But

16     there's more.

17          I went personally to the State Department, the

18     Registry of Corporations -- actually, they moved it; it's

19     near the courthouse in Hato Rey, above Denny's, third

20     floor -- to take a look at the annual reports for DDLV.  Any

21     corporation that has sales of $3 million or more has to file

22     annual reports.  So I found that there were no annual

23     reports for 2010, 2011, 2012, 2013, 2014.  I couldn't get

24     the information for 2015.  But in 2015, in August, the

25     Department of State sent a letter to Mr. Pasano's client,

1      Wayne Thuna, saying that they were going to suspend the

2      certificate of incorporation of DDLV because they didn't

3      comply with the annual reports and the payment of the annual

4      fee for 2010, '11, '12, '13, and '14.

5              In October of 2015, the Secretary of State

6      cancelled the corporation's certificate of incorporation.

7      In April of this year, Wayne Thuna issued a corporate

8      resolution signed by Wayne Thuna, but it states that it is

9      after the board of directors of DDLV met.  And the board of

10     directors is Martin Thuna, president; Wayne Thuna, vice

11     president, secretary and treasurer.  They decided to request

12     from the Secretary of State reinstallment or (Speaking in

13     Spanish) is the word they use.  And it said after

14     submitting -- after paying the corresponding fees and

15     submitting the annual reports.  So one would think that the

16     annual reports were submitted.

17             Well, to make a long story short, the corporation

18     was restored in April of 2016.  The annual reports are still

19     not -- nowhere to be found.  So that prompted me to go a

20     little bit further, and say, well, they don't file the

21     annual reports.  We know they do -- they sell more than

22     $3 million a year.  So how about their tax returns?  So

23     yesterday I got a negative certification -- that's one of

24     the documents I had in the PowerPoint I wanted to show you.

25     There's no tax returns for DDLV for the year 2010, 2011,

1    '12, '13, '14.  Don't have any information for 2015.  There

2    is no tax returns under their name and employer Social

3    Security number.  So -- and this -- this is a defendant too.

4           THE COURT:  Is there tax returns prior to 2010?

5           MR. RUIZ:  There is -- apparently there is -- we

6    have information in 2009.  From the discovery that we gave

7    originally, it seems that tax returns were filed for 2009.

8    Now we are trying to obtain information -- additional

9    information as to that.  And the DDLV was indicted

10   originally.  It wasn't one of those defendants that were

11   superseded in December of last year.  So DDLV as a

12   corporation had to comply with the law.  Of course, it's a

13   corporation.  It's not an actual person.  But it's handled

14   by Martin Thuna, Wayne Thuna, and I think Sonia, who is

15   Thuna's wife, has a position there, board of directors.  No

16   income tax filed.

17          Now, our intention, Your Honor -- we also wanted

18   to show you, during the search of DDLV, there was a

19   report --

20          THE COURT:  When was that performed?

21          MR. RUIZ:  On June 14th.

22          THE COURT:  Last week?

23          MR. RUIZ:  Last week.  DDLV --

24          THE COURT:  The --

25          MR. RUIZ:  The warehouse.

1          THE COURT:  The warehouse where?

2          MR. RUIZ:  El Tuque, Ponce.

3          THE COURT:  El Tuque.  Okay.

4          MR. RUIZ:  One of the suppliers for DDLV is called

5     Lakeway; Lakeway Pharmacy.  There is a report in DDLV that

6     we have that a pharmacy in California returned some product

7     to DDLV, specifically to Lisa Fisher, who is the daughter of

8     Eugene Shirley.  They return a product, and the drug was

9     Epzicom.  And they returned it -- they return a bottle of

10    Epzicom -- the customer returned it to the pharmacy.  The

11    pharmacy is returning it to DDLV because it contained

12    another product.  And we seized that bottle of Epzicom

13    because it was in the desk, together with documentation

14    relating to Lakeway, of Martin Thuna.  And the bottle of

15    Epzicom in Martin Thuna's desk had what is called trail mix.

16    Have you ever eaten trail mix?  That's nuts with raisins,

17    cashews, that sort of thing.  That contained trail mix, like

18    M&Ms with nuts.  And I have a photograph to show you, but my

19    computer won't open.

20          Now, it doesn't stop there.  Lakeway, there is

21    documentation found at DDLV that its director is the name of

22    a man -- I can't pronounce his last name -- who has a

23    criminal record of burglary, theft.  And it's one of the

24    papers found at DDLV.  The information that we gathered is

25    that that check done by DDLV appears to be done in

1   December 2015.  They continued doing business with Lakeway

2   until, like, two months later; February 2016.

3        Lakeway is just one.  I was going to show you

4   photographs of Levitz Distribution that made business with

5   DDLV from 2013 to 2016.  In March of 2013, DDLV sent a

6   private contractor to conduct a site inspection of Levitz

7   in -- Levitz is licensed in Connecticut.

8        MR. ACEVEDO:  Can you spell that?

9        MR. RUIZ:  L-e-v-i-t-z Distributors, Inc.,

10  licensed in Connecticut.  It's a wooden house; a two-floor

11  or story wooden house in Connecticut.

12       THE COURT:  Excuse me.  Mr. Acevedo, if you want,

13  after we finish all of this, you can talk to the court

14  reporter and get her to make a -- give you a copy of the

15  transcript.  Of course, you have to pay for it.  But that

16  way you won't have to -- you will have all the information

17  there so you don't miss anything.

18       MR. ACEVEDO:  That's fine.  Thank you.

19       THE COURT:  You talk to her and make the

20  arrangements, and the fee.

21       MR. ACEVEDO:  We always request the transcript.

22       THE COURT:  Oh, okay.  Fine.

23       MR. RUIZ:  Levitz Distribution, Your Honor, it's a

24  wooden house.  It looks like it's falling apart from the

25  street, and you can't see the sign because the sign is --

1    it's in a little mailbox at the door that says, "Levitz,

2    first floor," of the second-story wooden house.  And when

3    you go inside, the photographs show it's practically empty.

4    There is a desk, a chair.  There was a laptop and a bookcase

5    with no books.  And the report by the person contracted by

6    DDLV stated that this was not an appropriate site for this

7    kind of business.

8          The person conducting the site visit in the report

9    stated that she was leaving, but then she remembered to

10    return to ask something, and the person from Levitz who was

11    inside was walking away with a laptop.  And when the person

12    realized that she was turning back, he went inside and put

13    the laptop back in.  Now, I feel really bad that I can't

14    show you the pictures, because the pictures are much more

15    descriptive than what I am saying to the Court.

16          THE COURT:  A picture is worth --

17          MR. RUIZ:  Yes, a thousand words, Your Honor.

18    Because this doesn't do justice to -- and I have spent all

19    night last night putting this together, and I feel -- I am

20    really mad at my computer, so I am really sorry for that.

21          Now, that is Levitz.  We believe, Your Honor --

22    what we were going to ask anyway to the Court was the

23    following:  We believe there is compelling evidence of

24    violations of law while under bail, which Your Honor --

25    everybody knows, that can give rise to revocation of bail.

1    Now, we are not asking to revoke bail here today.  No.  We

2    think it is our responsibility to present that evidence to

3    the Court in a more detailed way, and we would request a

4    time to do that of 30 to 45 days.  Now, it could happen that

5    if -- in the time of 30 to 45 days -- because we have given

6    the affidavit with the evidence to counsel.  We are going to

7    give those documents that I talked about in the PowerPoint,

8    I will give them too.  I can send them in an e-mail -- they

9    are not that voluminous -- to everybody.

10           If we can reach an agreement and dispose of the

11   case in a way that is satisfactory to the Court, it's the

12   type of plea agreement that I can bring to the Court --

13   which, I am not going to bring some plea agreement that is

14   unrealistic -- then we may do so.  But if not, then it's our

15   duty to present that evidence to the Court, and then we

16   would proceed with the indictment, which, if we present, for

17   example, a separate indictment, we would move later to join

18   that indictment with this case because it's -- same set of

19   offenses, common defendants.  It would be expedited to have

20   this case tried together with the first case.

21           THE COURT:  And it would be a continuation of the

22   conspiracy.

23           MR. RUIZ:  We -- I would believe it would be, yes,

24   part of an overarching conspiracy within the Thunas to

25   continue to do the same thing after they are on bond.

1          THE COURT:  The bail that you are talking about,

2    it's whose bail?

3          MR. RUIZ:  The bail relating to Martin Thuna,

4    Wayne Thuna, and Eugene Shirley, who are the defendants who

5    we have evidence that continue to do this while on bond.

6          THE COURT:  Okay.  And Drogueria, of course.

7          MR. RUIZ:  But that's a corporation.  Yes.  That's

8    basically, in a nutshell, what we have.  We know that there

9    are two motions pending that we have to answer.  Mr. Pasano

10   filed a -- actually, a notice of 404(B) motion and a motion

11   concerning some information from a person from Madison And

12   Associates, which we intend to answer.  That was filed last

13   week.  And Mr. Rentzer, who represents Mr. Khacheryan, also

14   filed a motion that we intend to respond in writing, Your

15   Honor, within the allotted time.

16         THE COURT:  Question.  You have -- yes.  The

17   motion from Mr. Khacheryan is Docket 1345, which you have to

18   answer.

19         MR. RENTZER:  Good morning again, Your Honor.

20   Robert Rentzer.  That motion from Mr. Khacheryan, the Court

21   threw a number at me and --

22         THE COURT:  Docket 1345.

23         MR. RENTZER:  I believe, Your Honor.

24         THE COURT:  All right.

25         MR. RENTZER:  I didn't bring the file with me.

1    THE COURT:  Since I had a question here about

2    that, but -- Mr. Ruiz --

3    MR. RUIZ:  Yes, Your Honor.

4    THE COURT:  -- how do you propose to proceed after

5    having made these statements to the Court in relation to

6    meeting with counsel and discussing your proposals to

7    counsel?

8    MR. RUIZ:  This is what I intend to do:  I intend

9    to give them the affidavit today.  I will send by e-mail the

10   documents in my PowerPoint that are basically what I stated

11   to the Court here today.  I will gladly meet with them after

12   they have digested those documents -- they want to meet with

13   me -- to see if they are willing to reach a proposed

14   agreement.  If not, Your Honor, we have a duty to bring this

15   to the Court because this is -- this is not -- this is a

16   company that in 2014, Your Honor, sold over $38 million, and

17   there is no tax return for it.  It's worrisome.

18   And so -- but we intend to give them an

19   opportunity -- give those documents to them, the affidavit,

20   and I will send by e-mail, if I have everybody's addresses,

21   the documents that are in my PowerPoint, and then I will

22   meet with them.  But I would need, Your Honor, 30 to 45 days

23   to report to the Court.  And if the answer is no -- and we

24   intend to offer, Your Honor -- if we are going to make an

25   agreement here, it has to be a package deal.  We are not --

1　　in a case as voluminous as this, we are not going to just

2　　have a plea for one defendant and another defendant going to

3　　trial, especially as to the three related to DDLV.  Because

4　　there's other defendants that we were not going to include

5　　in the package, but those three we intend to offer a package

6　　deal.

7　　　　　　　THE COURT:  That is which three?

8　　　　　　　MR. RUIZ:  Martin, Wayne Thuna and Eugene Shirley,

9　　who are the DDLV natural defendants.

10　　　　　　　THE COURT:  Eugene.

11　　　　　　　MR. RUIZ:  Eugene Shirley.  And that's our intent,

12　　Your Honor.

13　　　　　　　MR. RENTZER:  May I further address the Court?

14　　　　　　　THE COURT:  Yes.  Go ahead.

15　　　　　　　MR. RENTZER:  Yes, Your Honor.  In terms of that

16　　motion, on the prior motion, I know that the Government

17　　asked for additional time to respond.  And I want to go on

18　　record indicating that should the Government wish additional

19　　time, there would be no objection --

20　　　　　　　THE COURT:  Counsel, I can't hear you.

21　　　　　　　MR. RENTZER:  I'm sorry.  I want to go on record

22　　that should the Government wish additional time, there would

23　　be no objection.  I haven't had a chance to meet with the

24　　Government yet on this case and was hoping to do so today.

25　　　　　　　THE COURT:  You are talking about Mr. Khacheryan?

1          MR. RENTZER:  Khacheryan, yes.  There is also

2    discovery that -- I got a disk with a code.  I couldn't open

3    the disk.  We are trying to work that out.  So we have some

4    discovery pending.

5          THE COURT:  You have Mr. Sanchez and Mr. Rebollo

6    as local counsels?

7          MR. RENTZER:  Yes, local counsel is here.

8          MR. SANCHEZ:  Just me, Your Honor.

9          THE COURT:  Okay.  I'm sorry.  Just Mr. Sanchez.

10          MR. RENTZER:  I just wanted to indicate that we

11    would not oppose --

12          THE COURT:  Counsel --

13          MR. RENTZER:  I want to meet with counsel.

14          THE COURT:  -- address me.

15          MR. RENTZER:  I'm sorry.  Once again, forgive me,

16    Your Honor.  I want to meet with the Government and discuss

17    the case so --

18          MR. RUIZ:  We will meet with counsel.  No problem

19    at all.

20          MR. ANDUZE:  If it pleases the Court.

21          THE COURT:  Go ahead.

22          MR. ANDUZE:  I don't believe that it's fit or

23    proper or prudent for us to try to attempt any answer to

24    what Mr. Ruiz has presented to the Court today.

25          THE COURT:  He didn't say you had to meet with him

1    today.  He said that he would give you the affidavit today,

2    and then other documents that he has mentioned, give you

3    time to digest it, and then you could have a meeting.

4    That's why I asked him what did he propose to do, because I

5    have no objections that, you know -- if counsel wants to

6    meet, I can't prohibit that you don't meet.  So -- and if

7    that were to move the case along, I would certainly welcome

8    it.

9              MR. ANDUZE:  So would we, Your Honor.  If we could

10   move it along, that would be fine.  So we just wanted to

11   state that for the record, in order for the record -- our

12   silence doesn't mean that we are in any way accepting or

13   acknowledging the Government -- the statements made.

14             THE COURT:  Of course not.

15             MR. ANDUZE:  Thank you.

16             MR. PASANO:  Good morning, Your Honor.  Again,

17   Michael Pasano on behalf of Wayne Thuna.  Sometimes

18   counsel's expectations are changed by events that occur, and

19   today we intended to go over with the Court some things that

20   were open and pending.  In light of Mr. Ruiz's

21   announcements, it strikes me that it would be inappropriate

22   for me to be asking the Court to do much of anything until

23   we can clear up what now is a large cloud in connection with

24   the case.

25             THE COURT:  And I assume that you have no

1    information as to that whatsoever from your clients --

2         MR. PASANO:  The information I have would not

3    agree necessarily with the manner in which Mr. Ruiz

4    presented it.  But as Mr. Anduze said, I don't think today

5    is the day to take that up.

6         THE COURT:  Of course not.

7         MR. PASANO:  But we recognize the seriousness of

8    the issues that Mr. Ruiz raises.

9         Judge, I would, just for clarity purposes,

10   identify three things to be discussed, hopefully, if

11   appropriate --

12        THE COURT:  With Mr. Ruiz?

13        MR. PASANO:  -- with the Court at a future date,

14   but just so my silence today doesn't leave them open.

15        THE COURT:  Let me interrupt you.  You don't have

16   to worry, Counsel, that if you do not speak up today, that

17   then somehow or other the Court will assume that you are in

18   agreement with.  That's a far cry from what it actually is.

19        MR. PASANO:  I appreciate that.

20        THE COURT:  May I have the three things?

21        MR. PASANO:  Yes, Your Honor.  We recently

22   received an amended designation with respect to the

23   superseding indictment.  We would at an appropriate time

24   have further comments about it, but given Mr. Ruiz's

25   announcements, I don't propose to take that up with the

1    Court today, unless the Court wants.

2              THE COURT:  Of course not, because that amended

3    designation -- if no headway is made during the

4    conversations, then you are going to have a superseding --

5    super-superseding indictment facing you.

6              MR. PASANO:  Exactly.  Thank you, sir.

7              Second, Mr. Thuna has seven --

8              THE COURT:  Mr. Wayne?

9              MR. PASANO:  Mr. Wayne Thuna, my client, has seven

10   substantive motions that are outstanding.  I was going to be

11   asking the Court to consider setting a hearing date.  Again,

12   given Mr. Ruiz's announcements, I think my request would be

13   premature.

14             THE COURT:  Uh-huh.  And the third one?

15             MR. PASANO:  In connection with the search that

16   just happened last week, we don't know -- and I suspect the

17   affidavit may help clear this up -- everything that occurred

18   in the search.  There is a concern.  One of the offices

19   searched is Mr. Wayne Thuna's office at Ponce.  In that

20   office, on the walls and on his desk, were attorney/client

21   work product material that related to the defense of this

22   case; charts and the like.  I understand that Counsel

23   present during the search advised the agents that there were

24   attorney-privileged items in that office.  I don't know yet

25   what, if anything, was seized.  I simply want to alert the

1    Court that there may be an issue with regard to that.

2    But again, that's something I will first discuss with

3    Mr. Ruiz.

4         THE COURT:  Okay.  And that -- because of the

5    nature of that issue, you can bring that up to the Court

6    anytime you think it would be appropriate, even though you

7    may have reached an agreement whatsoever.  Well, if you

8    reach an agreement, then I think it would be academic at

9    that time.

10        MR. PASANO:  I agree, Your Honor.  And I

11   appreciate that.

12        THE COURT:  But if you do not reach an agreement,

13   then certainly the Court will consider any motion on the

14   issue of attorney/client privilege.

15        MR. PASANO:  Thank you.  Those are the three items

16   I was going to address.

17        THE COURT:  All right.  So you have addressed

18   them.

19        MR. PASANO:  Thank you.

20        MR. BOYLE:  Good morning, Your Honor.  James Boyle

21   on behalf of Drogueria de la Villa.  Two quick things that I

22   wanted to raise with the Court.  One is just a point of

23   clarification for Mr. Ruiz.  In my telephone conference with

24   him last week, after the search warrant had been executed in

25   Ponce, we discussed the provision of the supporting

1    affidavit, which he's addressed with the Court this morning.

2    There is also a referenced Exhibit B to that warrant, which

3    were the materials, documents, things that the Government

4    was entitled to seize.  We would ask the Court to also

5    instruct the Government to provide that document to us.

6    Mr. Ruiz had indicated he would do so, but I want to make

7    sure that we get that as well.

8        MR. RUIZ:  That's included in what we are going to

9    give you.

10       MR. BOYLE:  Okay.

11       THE COURT:  That would be the inventory of the

12   things that were seized?

13       MR. BOYLE:  We have received the inventory reports

14   of what was seized.

15       THE COURT:  You have not received the documents

16   that are in that report?

17       MR. BOYLE:  Correct.  In the warrant there is a

18   reference to an exhibit which identifies what the magistrate

19   judge had authorized the Government to seize.

20       Then the second issue, with regard to what

21   Mr. Pasano just mentioned on the attorney/client privilege

22   issue also applies to the corporation, given that Mr. Wayne

23   Thuna is an officer of the corporation, and those materials

24   were for the corporation as well.

25       THE COURT:  All right.

1         MR. BOYLE:  All right.

2         THE COURT:  Thank you.

3         MR. ACEVEDO:  I have a question for Mr. Ruiz.  Are

4    we also going to receive the seizure warrants of the

5    accounts?

6         MR. RUIZ:  Those I am keeping for now.  I

7    expressly stated I was going to give the affidavit for the

8    DDLV search warrant, Your Honor.  Those --

9         MR. ACEVEDO:  Has a seizure complaint been filed?

10        MR. RUIZ:  There is -- a seizure warrant has been

11   executed.

12        THE COURT:  I am sure your accountants are going

13   through it very minutiously, if that word exists.

14   (Speaking in Spanish).

15        MR. REBOLLO:  Judge, although I think the record

16   is clear today, out of an abundance of caution, if I can

17   request confirmation from the Government that the new

18   developments only involve or implicate the four mentioned

19   defendants.

20        THE COURT:  Three.

21        MR. REBOLLO:  Three personal and one corporate.

22        THE COURT:  Okay.

23        MR. REBOLLO:  And not any of the other

24   co-defendants.

25        MR. RUIZ:  The only three defendants, yes, that

1    are implicated, are the ones that are on bond, who dealt

2    with other businesses.  But Mr. Rebollo's client is not one

3    of those, according to information we have.

4              THE COURT:  All right.

5              (WHEREUPON, discussion was had off the record.)

6              THE COURT:  Anything else?

7              MR. RENTZER:  If I may once again.  Robert Rentzer

8    for Tigran Khacheryan.  Counsel was good enough to confirm

9    that one of the co-defendants was not part of these

10   additional three and the new search warrants.  I will ask --

11   I believe he will confirm, Mr. Khacheryan also is not a

12   party to this new development.  And further, he mentioned

13   that there was a document found in a desk of a name he could

14   not pronounce.  Likewise, I believe, Mr. Ruiz would confirm

15   that that does not involve Mr. Khacheryan either.

16             MR. RUIZ:  That document doesn't, but I can't say

17   that Mr. Khacheryan is not one of the principals of one of

18   the new suppliers for the Thunas.  That I cannot say,

19   because he is --

20             MR. RENTZER:  But that was not the name that he

21   could not pronounce.

22             MR. RUIZ:  Not for Lakeway.  Yes.  He is

23   associated to another company.

24             MR. RENTZER:  That was my point, Judge.

25             THE COURT:  Okay.  Any other comments or any other

1      matter to bring forth?

2                  MR. ANDUZE:  No.

3                  THE COURT:  All right.  You are excused.

4                  MR. RUIZ:  As to the motion to unseal, can we have

5      permission of the Court to provide --

6                  THE COURT:  Yes.

7                  MR. RUIZ:  Thank you, Your Honor.

8                  (PROCEEDINGS ADJOURNED AT 12:03 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT )
2  OF PUERTO RICO              )  ss.
                              )

3

4

5                    **REPORTER'S CERTIFICATE**

6

7

8          I, LISA O'BRIEN, do hereby certify that the above

9   and foregoing, consisting of the preceding 24 pages,

10  constitutes a true and accurate transcript of my

11  stenographic notes and is a full, true and complete

12  transcript of the proceedings to the best of my ability.

13          Dated this 1st day of July, 2016.

14

15                        ____S/Lisa O'Brien_____
                          Lisa O'Brien
16                        USDC Court Reporter

17

18

19

20

21

22

23

24

25